Good morning, your honors. May it please the court, Ashwini Mate representing Miguel Quevedo-Cordero. The main question at issue in Mr. Quevedo-Cordero's case is whether or not the district court properly calculated or properly conducted an independent calculation of the guidelines range before enhancing his sentence by 16 offense levels under guideline section 201.2. The answer to that question is no. In order to properly calculate the guidelines range, the district court should have done a categorical and modified categorical analysis and failed to do so. Is this another one where the prosecutor just didn't bother getting the state court records? Yes, your honor. The state court records that were offered in the A file similarly don't support the contention that the substance at issue was indeed rock cocaine. So the only document that was proffered into evidence before the district court, the probation report, is insufficient under Shepard for the district court to rely on in order to impose the enhancement. Is there any explanation of why the prosecutor didn't get the state documents that would be sufficient under Shepard? You would have to ask the government counsel that question. There's nothing in the record then. Your client did admit at least once and probably twice during the plea colloquy that his was a drug trafficking offense within the meaning of the sentencing enhancement, so it wasn't entirely irrational. But I recognize that that's not necessarily legally sufficient, but they could explain it. And under 1326b2, the only thing that is a factual element necessary for the enhancement to apply is that the prior conviction be an aggravated felony. So any reference to a drug trafficking offense was merely descriptive. And under the guidelines, an aggravated felony only merits a plus-8, not a plus-16 enhancement. As I recall, the California trafficking statute is broad enough so it would include a kid going back to college with a baggie of marijuana in his backpack. Yes, Your Honor, which is why under Lael Vega, this court determined that 11351 was overbroad and that the substances involved were broad. Really here we know better, but it's kind of like a bank robbery case where the prosecutor just forgets to put on evidence that the bank is federally insured. And I would submit that that's because there is no evidence in this record about what the substance was that Mr. Quevedo Cordero pled guilty to in his 1998 conviction. Furthermore, the district court's reliance on the PSR, I think this court has repeatedly held, was incorrect. And the probation report that defense counsel referenced in sentencing arguments, first of all, as my prior counsel stated, any of defense counsel's statements made during sentencing cannot be used or relied upon as proper CHEPRA documents under this court's precedent in Gonzales-Aparicio. Furthermore, even defense counsel's statements were in reliance on the probation report, which here wasn't even definitive that the substance was raw cocaine. At one point in the probation report it says it was, and then at another point it says that it was merely a substance resembling raw cocaine. So there was nothing in this record, not even the probation report, that the district court potentially relied on to make this enhancement to indicate that the substance here was raw cocaine. So I submit there's no evidence that would justify the 16-level enhancement applied in this case. Moving on to my second argument, the district court here violated my client's constitutional right to effective assistance of counsel when he, when the court stated that it was imposing a longer sentence than it would have under the fast-track plea agreement, when my client only turned down the fast-track plea agreement in order to investigate a factual innocence defense. I don't get it. I think Judge Graber would. Yeah. I'm just going to say that the court took that into consideration explicitly, right? Yes. So why is that a problem? I mean, I know the court didn't reach the sentence that you would have preferred or that your client would have preferred, but the court did acknowledge that and said that that was appropriate for counsel to have done that. But nonetheless, where's the problem? But the sentence imposed was still longer than the sentence that would have, that the defendant would have been facing under the fast-track agreement. But so what? He turned down the deal. And it's not like fast-track is some matter of justice. It's just a docket-clearing mechanism that the prosecutors and judges use in the overburdened districts to give people sentences that are way below the guidelines in order to clear the cases. Yeah. Where a defendant is similarly situated to fast-track defendants, it affects an unwarranted disparity in sentencing when they're not given the same sentences. How is this different than any other time when a defendant decides to forego a good plea deal to look at a better opportunity for defense, to investigate something that they think might do them even more good? How is it any different from that? And does that mean that any such defendant gets to come back and say, Aha, now I want to take the deal? Well, I can't speak to any such defendant. But in this case, I think Mr. Quevedo-Cordero was very similarly situated to fast-track defendants. Why isn't he similarly situated to the kinds of people that I just spoke of, people who turned down a good deal to investigate a better defense that doesn't pan out? And they don't get the benefit of that earlier offer. Because he still complied with all the requirements under the fast-track agreement. He pled extremely early, immediately after he was given the information that only the government could give him. The judge took it into account. He said he was knocking 10 months off the guidelines minimum, partly because the judge commended counsel for being diligent in pursuit of this derivative citizenship defense. Again, Your Honor, I would argue that that's still longer than the time he would have been facing under the fast-track. The only reason he said he didn't go down the entire fast-track amount was because of the extensive criminal record, right? The court later said that, but initially the court indicated that it would have imposed the same sentence that defense counsel was requesting had the defendant signed the fast-track agreement. Whether the court said it later or earlier, the court's reasoning on the record was I'm giving you all of the fast-track except your extensive record convinces me I'll take back a couple months. And he gave a reason why he didn't give the entire fast-track. But if the district court was originally intending to impose a sentence similar to that that defense would have been requesting under the fast-track and chose not to because he hadn't signed the agreement, then the only fair interpretation is the district court was then penalizing my client for, you know, investigating a factually innocent defense. If he had been on fast-track and had accepted it, did the court have any discretion to vary because of underrepresentation of criminal record or did the court not have discretion at that point? That would depend on the nature of the fast-track plea agreement. If it was binding under 11C1C, my understanding is that the district court would have no discretion to vary at that point. But we don't know what the agreement would have said. No. So it's a little bit speculative. Yes, Your Honor. I thought the law of the circuit was under Vasquez-Landover, I think it's called, that when a defendant voluntarily chooses to reject or withdraw from a plea bargain, he retains no right to the rejected sentence, and there's an exception when the judge conveys through sentencing that he's punishing a defendant for asserting his right to jury trial. Right, and we would argue that this case falls within that exception because the district court indicated that it would have imposed the fast-track sentence had our client accepted the agreement. And since our client did not accept the agreement, the district court then went on to impose a much longer enhancement than he would have received under the fast-track. Show me the words here in the sentencing transcript that you're making your case on. The words in the sentencing transcript are on page ER86, where the court says defense counsel Meyerson is requested a sentence of 36 months, which would be the sentence the court would impose if the defendant had accepted the offer of the government. Okay. Did you want to save a little rebuttal time? Yes, I'll reserve the rest of my time for rebuttal. Thank you, Your Honors. Good morning, Your Honors. May it please the Court, Ashley Aul for the United States. I want to start by contesting the premise that this is just a plain error case and so is controlled by the same principles in Castillo-Marin, which was a plain error case. This is not just a case that involved a failure to object to a PSR. And if it were that kind of case, I think you're trying to avoid the shepherd requirements on what documents can support an enhancement on the basis that they weren't objected to. Have I got that right? Respectfully, Your Honor, I don't think that is right under the Pagayan and the Perez-Mejia cases that the government cited. Perez-Mejia is not a criminal case. That's true. It's an immigration case. That's true. Is there any criminal law case of which you are aware that, I mean, to say that you're removable? But are you aware of any case that says if a person admits to a drug-trafficking crime, then the government is absolved of the need to put in shepherd documents? Not in the shepherd context. We've cited cases in general dealing with the effect of pleas, both in collateral proceedings and in the same proceedings. But why doesn't shepherd, and all of this around the shepherd is a shorthand for that whole range of cases, seems to be very specific and very rigid in the requirements that it places upon the government and upon the district courts for the modified categorical approach? And why doesn't that more specific area of law govern over these kind of nice general principles of allowing people to admit to things? I think insofar as we're looking at the sort of shepherd approach as a very specific area of law, then it doesn't matter that Pagayan and Perez-Mejia are immigration cases because the categorical and modified categorical approaches were and are applied exactly the same way in those contexts as they are here. But those cases are not about admitting to an enhancement without proof. But what they're about is whether or not the government is relieved. There's a burden of proof under shepherd, and it's a clear and convincing or similar burden. To me, this sounds so much like a prosecutor in a bank robbery case saying, well, the defendant never put at issue whether it was a federally insured institution, but that's an element of the crime, and if the prosecutor didn't put on the evidence that it was, there's a directed verdict or judgment as a matter of law that the defendant is acquitted. And on seeking the enhancement, the prosecutor has the burden of putting on shepherd documents that show that the previous crime justified the enhancement, the prosecutor didn't, and now you're telling us ignore it because the defendant didn't object to a pre-sentence report that says that the crime was adequate for the enhancement, except we have binding law that says a pre-sentence report isn't enough under shepherd. Your Honor, if all we had was the facts that Your Honor has outlined and a failure to object, I would be with you absolutely. The difference here is that under both the general plea cases and the Pagai and Perez-Mejia line that deals with the categorical modified categorical approach, the government is relieved of their burden of proof. That is a language that is more or less common to those two lines of cases after a guilty plea that entails particular facts and legal conclusions. And so I absolutely agree with you that if there was no objection, there might be a problem. But we are not in a case where there was just no objection, and we're not just in a case even where there were admissions at the sentencing phase that might be said not to be cognizable under shepherd. What we have is we have a guilty plea that entails exactly what was needed to support the enhancement. And so I think that most of the... Well, specifically, what are you relying on to say that every aspect of the enhancement is supported by what's said at the plea? So at ER 18 to 19 and ER 24. Okay. I'm looking at 18. I can read it if it's helpful. No, I'm looking at... So it's because of the... We're back to the divisible, indivisible question here because it's a conviction of 11351 for which a sentence imposed exceeded 13 months. But at least at page 18, it doesn't state what the substance was. There's nothing on 18 or 19 that I see. It does not say the substance. It says it's a drug trafficking offense. I know that. Is there somewhere in here that tells us what drug? No. Okay. Well, that's what I thought too. Why are we assuming this to it? Your Honor, because I think ultimately the reason why you need to know the type of drug is to determine whether or not it's a drug trafficking offense. We know under Coronado, which binds us, that a materially similar statute is divisible. So the modified categorical approach may be applied. Yes. That's your case. It was posed pre-Coronado, basically, by your adversary. What we don't know, I don't see any basis in the excerpts, and I was hoping you were pointing them out to me, but evidently not, that there's something in the record to show that there was shepherd material upon which the judge could apply the modified categorical approach, and in fact, he did. I just can't find it. So if there's another piece of the excerpts I should look at, tell me. There are pleading stage excerpts that we've cited as to the, pardon me, there are sentencing stage excerpts that we've cited elsewhere. As to the pleading stage, the government's position is the admission that it's a drug trafficking offense is the only admission that really matters. Would you assume for the purpose of my next question that we don't agree with you on the binding quality of the type of admission that was made here in the context of the modified categorical approach? And I'm going to ask you the same question I asked in the previous case of the government. Is this a situation in which it would be futile to remand on an open record? I don't believe so, Your Honor. I confess the documents do exist. I can't recall standing here what is in those documents. Well, you do know that the documents exist. Well, it's a 1998 case, and documents from this conviction exist. But what I don't know standing here, and I should have known, is what they say. That said, there's been no request here to remand on a closed record. The initial request was for a remand for the court to consider to engage in a proper analysis. And so I think that should the court disagree with me on the point, I think that would be the remedy that's appropriate. Do the lawyers in this district, whatever district this is that these cases are coming out of, just not bother to go and get the State documents unless they get reversed and they've been told twice to get them? You know, Your Honor, I think this actually goes to sort of the ---- This is a different district than the last case. This is different from the last case, Your Honor. But I also think it does go to the sort of why plain error can do some violence in cases like this. Because what you did have from either the court's perspective or from, frankly, the government's perspective, was a defendant who admitted at the pleading stage to whether or not it's cognizable everything that was needed to support both the sentence and the conviction. When you got to the sentencing phase, not only was there no objection to the PSR and these things that said that a plus 16 applied, there was repeated concurrence that a plus 16 applied. There was explicit concurrence that a plus 16 applied because it was a drug trafficking offense. And so while the court may find plain error, and the court found plain error in Castillo-Morin. I don't remember the stipulation. That could be a waiver. We've argued waiver, Your Honor. Okay. Where is the stipulation? It's not a stipulation. It's in the sentencing papers. I can just give you a list of citations. At ER 47, the defendant recognized the 70 to 87-month guideline range explicitly, which includes the plus 16. At ER 49, again, they recognized the 16-level enhancement for defendants. This is a, quote, rock cocaine drug trafficking conviction. That looks like just general historical discussion. I don't see anything here that concedes what this guy did. That's what I was looking for, the stipulation. I don't think I understand the distinction. I'm sorry, Your Honor. And on at sentencing in argument, the defense counsel. What he's doing is talking about meeting the goals of sentencing reform, articulated, and the guideline was developed by an exhaustive analysis of a large volume of sentencing data, 10,000 pre-sentence reports from 100,000 cases. It doesn't look like a stipulation about what this fellow. If I could also. Gerardo Cordero did. If I could direct the court's attention. Also, at sentencing, this continued. I don't think this can be disregarded as something that was said. You're just saying I should look at the whole thing and I'll find it. No, no, I'll give you the citations. So the court at sentencing stated, this is the court, the defendant did not object to the findings and conclusions in the PSR in reference to the adjusted offense level calculation and criminal history category to which defense counsel assented. Defense counsel again concurred in the guidelines range at ER 88 to 89, and albeit to go to Your Honor's point, arguing in mitigation on other factors, defense counsel said at ER 89 the defendant, quote, receives a significant offense bump from 8 to 24, that's the offense level, because he has an aggravated felony. On that basis, Your Honor, the government's position is that this is simply not a plain error case and that these distinctions that we've been discussing do make a significant difference, both at the pleading stage and at the sentencing stage, and the court should find waiver. Thank you very much. Thank you, counsel. I'd like to ask you the following that relates to the waiver argument that the government's just been making. It certainly struck me as a very unusual case to bring to us, because your side of the case actually supplemented what the PSR had said about the conviction in 1998, and I think it was defense counsel that provided the state probation officer report, which showed that the drug involved was rock cocaine. So why isn't that a waiver of the right now to argue that the court has to go find out what was the substance when you offered information that described the substance? Because a waiver is, in order for this court to find a waiver, there has to be evidence in the record that defense counsel intentionally relinquished a known right in order to gain a tactical advantage. There's no evidence in this record indicating that defense counsel knew it could. Why does there have to be a tactical advantage? Don't people just sometimes give things up without a tactical advantage? If someone doesn't want a jury trial because they just don't want a jury trial, they can give it up. It doesn't have to be tactical, does it? No, Your Honor, but my understanding of what the case law says in United States v. Jimenez, which cites this court's en banc decision in United States v. Perez, generally intentional waiver is found. That's how I remember it. Generally, people waive rights because they think they'll get an advantage, but the intention or purpose of gaining a tactical advantage I don't recall as being an element of waiver. I mean, I think generally speaking, when you're intentionally waiving a known right, there's evidence that you sought to pursue an argument and that you then rescinded that argument. Or decided not to pursue that argument because of some other reason. And usually I'm... Well, the reason could be that you felt that you might get a more sympathetic hearing from the sentencing judge by saying, sure, this is what happened, and now, you know, be merciful in selecting the sentence. I mean, one can imagine reasons why counsel might do that. True, but there's no reason here where there is no clear evidence that a 16 offense level enhancement applied. Why wouldn't an attorney, if they knew that they could, and they knew that it was an available argument... But here apparently they knew that they couldn't. If it was a rock cocaine conviction for which there was more than a 13-month sentence, what would be the point of arguing it? Because the document that they relied on to say that it was rock cocaine is not reliable under Shepard. And the document itself doesn't actually indicate that the substance was definitively rock cocaine. If you look at the probation report provided on ER 67, at one point it says it's rock cocaine. The idea of a waiver, though, is that although the judge is supposed to look at Shepard documents, a defense lawyer can talk with his client and say, so you were maybe just taking a lit of marijuana back to college with you, or you were distributing some medicine or something that's on the California list but not the federal list, or what? What was it you were doing exactly? And he says, well, I sell crack on the corner. That's what I do. That's the only thing I do. But, you know, statements made by defense counsel at sentencing are still not reliable Shepard documents that the district court... But we're not talking about reliability or Shepard. The whole question is whether you waive the opportunity to make that argument to us. Arguably, the defense counsel's statements made during sentencing were only as to the minor nature of the offense as presented in the probation report. Any mention of rock cocaine was not necessarily intended to concede that the substance involved was actually rock cocaine for the purposes of the 16 offense level enhancement. It was only meant to describe that even the probation office deemed that this prior conviction was minor and was deserving of a probationary sentence alone. It was not intended to concede a 16 offense level argument. But there were other places where defense counsel did agree that the 16 level enhancement applied. Defense counsel's... By agreeing to the calculation of the guidelines range. But under this Court's precedent in Castillo-Moran and Gonzales-Apparicio, that concession does not absolve the district court from its independent duty to calculate the guidelines range. And in that vein, do the categorical and modified categorical analysis. Thank you, counsel. The case just argued is submitted.
judges: Ebel, Kleinfeld, Graber